UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
LINDA MENGELKAMP, :
: CASE NO. 1:11-CV-2589
Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. No. 31]
LAKE METROPOLITAN HOUSING :
AUTHORITY, *et al.*, :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Linda Mengelkamp filed this lawsuit against her former employers—Defendant Lake Metropolitan Housing Authority (LMHA) and its Board of Commissioners—and her former direct supervisor—Defendant Steven Knotts—claiming, among other things, that Defendants broke the law when they fired her for investigating and supporting allegations of gender discrimination and sexual harassment in the workplace. *See* [Doc. 3]. Defendants have moved for summary judgment on each of Mengelkamp's claims, *see* [Doc. 31], and Mengelkamp partly opposes that motion, *see* [Doc. 33]. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

I.

At the outset, the Court must do some procedural housekeeping. Mengelkamp's complaint

-1-

Case No. 1:11-CV-2589
Gwin, J.

asserted four causes of action: (1) retaliatory discharge, in violation of 42 U.S.C. § 2000e-3(a) and Ohio Rev. Code § 4112.02(I); (2) violation of Mengelkamp's First Amendment right to speak; (3) breach of contract, in violation of Ohio law; and (4) violation of Mengelkamp's right to due process. *See* [Doc. 3]. Defendants' motion for summary judgment addressed each of Mengelkamp's claims. And, more importantly, Defendants identified the "particular parts" of the summary-judgment record that Defendants say entitle them to judgment on those claims. Fed. R. Civ. P. 56(c)(1); *see* [Doc. 31].

Mengelkamp's response was not so thorough. Her introduction reads: "There are other violations of law alleged in the Complaint and supported by the evidence, but it is the retaliatory discharge claim, as pled in the First Count of the Complaint, that is the center of this dispute. Accordingly the plaintiff will confine her brief to a defense of the First Count." [Doc. 33, at 2]. And so she did.

Whether Mengelkamp intended to abandon counts two through four of her complaint is hard to say. But she has. Once a defendant moves for summary judgment and supports that request by identifying the parts of the record demonstrating why the defendant is entitled to judgment, the plaintiff must respond in kind. *See* Fed. R. Civ. P. 56(c)(1). It's not enough to answer that the "violations of law alleged in the Complaint [are] supported by the evidence." [Doc. 33, at 2]. Accordingly, the Court **GRANTS** summary judgment to Defendants on counts two, three, and four.

II.

Remaining, then, is Mengelkamp's retaliatory-discharge claim, to which she devoted her summary-judgment opposition brief. Both federal and Ohio law prohibit an employer from discriminating against an employee for opposing sexual harassment or gender discrimination in the

Case No. 1:11-CV-2589
Gwin, J.

workplace. Mengelkamp says Defendants fired her for opposing just such practices. And she says she can prove it to a jury with this evidence:

Defendants hired Mengelkamp in September 2009 as the Administrative Office Manager for the Lake Metropolitan Housing Authority. That role made Mengelkamp the Human Resource Coordinator for the office, which required her to "assist[], guide[], and train[] management staff on matters regarding employee relations issues (e.g., interviewing, hiring, promotions, terminations, safety, corrective action/discipline, etc.)." [Doc. 31-1]. It also made her the office's Equal Employment Opportunity (EEO) coordinator. *Id.*

On March 8, 2010, just six months into Mengelkamp's employment with Defendants, her direct supervisor—Defendant Steven Knotts—evaluated her as "truly an asset to LMHA." [Doc. 31-2]. He wrote: "working with Linda is a pleasure and it feels as if we have worked together for many years." *Id.* And he gave her a perfect evaluation score: 100 out of 100. *Id.* But two months later, Knotts fired Mengelkamp for "insubordination," "[f]ailure to satisfactorily perform assigned duties," "[f]ailure to perform job responsibilities and conduct [her]self with honesty and integrity," and "not treating employees with dignity courtesy, professionalism and respect." [Doc. 33-9].

What happened in the two-month period between Mengelkamp's perfect evaluation and her firing is a matter of some dispute. But on two things all are agreed: *First*, on March 9, 2010, LMHA employee Patricia England accused Defendant Knotts of gender discrimination, in particular, of "targeting her . . . because she is a strong, intelligent female," [Doc. 33-2]; and *second*, on April 29, 2010, LMHA employee Erica Peavy accused an outside vendor of sexual harassment. *See* [Docs. 31, at 5-6 & 33, at 3-5]. Mengelkamp, as was her duty, investigated both claims, and she raised both claims with Defendant Knotts.

Case No. 1:11-CV-2589
Gwin, J.

According to Mengelkamp, she resolved England's complaint against Knotts informally in a meeting between Mengelkamp, England, and Knotts. At the end of that meeting, Mengelkamp told Knotts that she believed his "aggressive reactions toward issue are making some of the staff feel uneasy and if this behavior toward [England] does not stop [Mengelkamp] will be forced to contact the EEOC." [Doc. 33-2].

Mengelkamp took a more formal approach with Peavy's complaint against the outside vendor. She interviewed witnesses and collected their statements, and she reached out to the Housing Authority's outside consultant on personnel matters. According to Mengelkamp, though, Knotts interfered with her investigation, at one point telling her that he "believe[d] [the accused outside vendor] and not Mrs. Peavy." [Doc. 33-3]. When Mengelkamp concluded her investigation and issued her final report on May 11, 2010, she told Knotts she had "concerns" that "he had compromised the objectivity of the investigation, or the appearance of objectivity, and that this put the agency at risk unnecessarily." [Doc. 33-7].

Knotts fired Mengelkamp six days later. [Doc. 33-9]. In a near-contemporaneous email to the Housing Authority's personnel consultant, Knotts lamented "the false [gender-discrimination] claims being made by folks here." [Doc. 33-8].

III.

Title 42, United States Code, Section 2000e-3(a) (also known as Title VII) prohibits an employer from discriminating against its employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, [*e.g.*, gender discrimination,] or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." So does Ohio Revised Code Section

-4-

Case No. 1:11-CV-2589
Gwin, J.

4112.02(I). (Because the Ohio Supreme Court "has held that an action under Ohio Revised Code § 4112 mirrors that under Title VII," the Court can and "will analyze [Mengelkamp's] state and federal claims of illegal retaliation solely under Title VII. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 541 (6th Cir. 2003).)

To succeed on her Title VII retaliation claim, Mengelkamp—who lacks direct evidence of retaliation—must prove her case circumstantially. And the *McDonnell Douglas* burden-shifting framework applies. See *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). At the first step, Mengelkamp must show a *prima facie* case of retaliation: (1) that she engaged in an activity protected by Title VII; (2) that Defendants knew she engaged in the protected activity; (3) that Defendants thereafter subjected her to adverse employment action; and (4) that a causal connection exists between her protected activity and the adverse employment action. See *Abbott*, 348 F.3d at 542. If she shows a *prima facie* case, then Defendants need to offer a legitimate, non-discriminatory reason for the adverse employment action. See *id.* If they do so, Mengelkamp will then need to show that Defendants' offered reason is a mere pretext for retaliation. See *id.*

A.

As this case illustrates, it is not difficult for a plaintiff to demonstrate a *prima facie* case of retaliation. Title VII contemplates two types of protected activity: (1) opposing unlawful employment practices; and (2) participating in "in any manner in an investigation, proceeding, or hearing under" Title VII. Defendants argue that Mengelkamp was not engaged in protected activity because her internal investigations did not "occur[] pursuant to a pending EEOC charge." *Id.* That's only half right. It is true that Mengelkamp did not conduct her investigations pursuant to a pending EEOC charge, and it may also be true that internal investigations conducted apart from a formal

Case No. 1:11-CV-2589
Gwin, J.

EEOC charge are not protected by Title VII. *See id.* But Mengelkamp's investigation and, more importantly, her efforts to stem and to remedy gender discrimination and sexual harassment at LMHA—including by threatening Defendant Knotts with an EEOC filing—are properly characterized as "oppos[ition]" to unlawful employment practices. 42 U.S.C. § 2000e-3(a). A case on which Defendants rely makes this very point. *See Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 n.3 (6th Cir. 1989) ("[M]erely threatening to file a charge should not be construed under the participation clause. To do so would blur the distinction between opposition to unlawful practices and participation in proceedings. Thus, threats to institute proceedings should be considered under the balancing approach of the opposition clause."). And so long as Mengelkamp had a "good faith belief that the practice[s] [were] unlawful," her efforts as LMHA's Human Resource Coordinator were protected by Title VII. *Id.* at 1312-13.[1]

With that, the remainder of Mengelkamp's *prima facie* case falls into place. Defendant Knotts knew Mengelkamp was actively opposing gender discrimination at LMHA—she told him so. And soon after that, he fired her. Moreover, the short period of time between Mengelkamp's protected activity and her firing—when combined with Knotts's startlingly recent praise of her work and his comments on the validity of the "gender issue[s]" Mengelkamp was investigating, [Doc. 33-8]—gives rise to the inference that Knotts fired Mengelkamp because she engaged in that protected activity. Accordingly, Mengelkamp has shown a *prima facie* case of retaliation.

---

[1] Defendants argue that Mengelkamp cannot proceed with an "opposition clause" claim because her complaint references only the "participation clause." *See* [Doc. 35, at 2]. The Court does not read Mengelkamp's complaint so narrowly. At several points Mengelkamp alleged that Defendants retaliated against her because of "her *support and investigation* of claims of gender based discrimination and sexual harassment in the workplace," [Doc. 3, ¶ 6] (emphasis supplied), and both the opposition and participation clause are contained in the same sections of the statutes Mengelkamp cited in her complaint. *See id.* ¶ 26; 42 U.S.C. § 2000e-3(a); Ohio Rev. Code §4112.02(I).

Case No. 1:11-CV-2589
Gwin, J.

B.

At this point the Court would ordinarily look to see whether Defendants have offered a legitimate, non-discriminatory reason for Mengelkamp's firing. It will not do so here.

Defendants' motion for summary judgment argued that Mengelkamp's retaliation claim failed because she could not demonstrate a *prima facie* case. But Defendants never argued—except blithely and in passing—that a legitimate, non-discriminatory reason justified Mengelkamp's firing. Although Defendants' motion is littered with statements that Mengelkamp "was terminated for lawful reasons," *see, e.g.*, [Doc. 31, at 13], nowhere do Defendants' argue that point in any serious way. In fact, nowhere in their opening brief do Defendants even point out that the *McDonnell Douglas* burden-shifting framework applies to Mengelkamp's retaliation claim.

It's not until page fourteen of their reply brief that Defendants finally raise the issue. *See* [Doc. 35, at 14]. And that's much too late. Defendants chose to lie in wait with those arguments and, having done so, must save them for trial. Reply briefs cannot raise novel arguments that do not directly respond to some position advanced by the other party.

In any event, the legitimate, non-discriminatory reasons Defendants ultimately did offer would not entitle them to summary judgment. Generally, Defendants say Mengelkamp behaved unprofessionally, and they point to complaints from other employees that Mengelkamp did not keep confidences. *See* [Doc. 33-9]. But was that the reason Knotts fired her, or is it merely a pretext for unlawful retaliation? All but perhaps one of the employee complaints was written between May 10 and May 13, 2010, *id.*,[2] just days before the firing, and as one of the complaining employees put it, Knotts *called her* to say "[t]hat he had received some disturbing information regarding . . .

---

[2] One was undated.

-7-

Case No. 1:11-CV-2589
Gwin, J.

[Mengelkamp] . . . [and] he was collecting information and requesting written statements," [Doc. 33-17]. Put this with Knotts's expressed frustration at what he saw as "false [gender-discrimination] claims being made by folks here," [Doc. 33-8], and a jury could conclude that Defendants' belatedly offered non-discriminatory reasons for firing Mengelkamp were pretextual. Accordingly, summary judgment on Mengelkamp's retaliation claim is inappropriate.

### III.

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

IT IS SO ORDERED.


Dated: September 5, 2012                    s/       *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE