UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                          :
LINDA MENGELKAMP,                         :
                                          :
        Plaintiff,                  :     CASE NO. 11-CV-2589
                                          :
        v.                          :     OPINION & ORDER
                                          :     [Resolving Docs. Nos. 79, 82 & 83]
LAKE METROPOLITAN HOUSING                 :
AUTHORITY, *et al.*,                      :
                                          :
        Defendant.                  :
                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Plaintiff Linda Mengelkamp sued her former employers, Lake Metropolitan Housing Authority ("LMHA") and its Board of Directors, along with her direct supervisor Steven Knotts (collectively, "Defendants"), for retaliating against her for reporting gender discrimination in the workplace. After trial, the jury awarded Mengelkamp both compensatory and punitive damages. Defendants now seek relief from that verdict, asking this Court to amend its judgment [doc. 82] or to order a new trial [doc. 83]. Mengelkamp, meanwhile, asks for attorneys' fees and costs. [Doc. 79.] For the following reasons, the Court DENIES Defendants' motions to amend the judgment or to order a new trial, and GRANTS IN PART Plaintiff's request for fees and costs.

I. Background

      From September 2009 until May 2010, Mengelkamp was the Administrative Office Manager for Lake Metropolitan Housing Authority. In that role Mengelkamp oversaw human resources for

-1-

Case No. 1:11-CV-2589
Gwin, J.

the office, which included assisting management staff on employee relations issues. [Doc. 31-1]. During her tenure, Mengelkamp investigated two claims of gender-based discrimination. Mengelkamp says Defendants retaliated against her because of her investigations and suggestions. Mengelkamp alleged that Knotts terminated her for insisting that these claims be properly investigated and fairly resolved. Mengelkamp filed both state and federal claims of retaliatory discharge against Defendants. [Doc. 58.]

A jury trial commenced on September 10, 2012. [Doc. 73.] After the close of Defendants' case, this Court reviewed interrogatories and jury instructions with the parties. Defendants' counsel objected to the definition given for backpay, as well as the structure of the interrogatories. This Court overruled both objections. The instructions eventually submitted to the jury addressed only the federal claim. The interrogatories asked for a total amount of compensatory damages, as opposed to having each damages component listed separately.

A few hours later, the jury awarded Mengelkamp $195,000 in compensatory damages, along with $105,000 from Defendant Knotts in punitive damages. [Doc. 75.] These motions followed.

II. Analysis

Defendants raise two motions attacking the validity and structure of the damages. Plaintiff, in turn, asks for attorneys' fees as a prevailing party in this civil rights litigation. This Court addresses each motion in turn.

A. *Motion to alter or amend judgment*

Defendants move this Court to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. They claim that the compensatory damages award violates the damages cap under 42 U.S.C. § 1981a(b)(3), that Knotts is not a proper party from whom to seek punitive

Case No. 1:11-CV-2589
Gwin, J.

damages, and that there was insufficient evidence to establish the standard for punitive damages.

Under Rule 59(e), a district court may alter or amend its judgment to correct a clear error of law, to account for newly discovered evidence or an intervening change in the controlling law, or otherwise to prevent manifest injustice. *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 728 (6th Cir. 2012). Such motions are not meant to function as motions to reconsider arguments already rejected by this Court. *United States v. Demjanjuk*, 838 F. Supp. 2d 616, 631 (N.D. Ohio 2011). This Court's resolution of this motion is within its informed discretion, and is reversible only for abuse. *Cline v. City of Mansfield*, 745 F. Supp. 2d 773, 841 (N.D. Ohio 2010).

### The Damages Cap

Defendants first argue that the compensatory and punitive damages awards exceed the federal damages cap. The size of a defendant's workforce impacts the total amount of damages that a plaintiff complaining of intentional employment discrimination may receive. 42 U.S.C. § 1981a(b)(3). As Defendant LMHA had for all times relevant to this matter between 14 and 101 employees, the cap on all damages against it is $50,000. *Id.* § 1981a(b)(3)(A).

But that's just for the federal claim. Mengelkamp also raised a corresponding claim under Ohio Revised Code § 4112.02(I) that survived Defendants' motion for summary judgment. [Doc. 59, at 4-5.] Both the Ohio Supreme Court and the Sixth Circuit have recognized that a claim under Ohio Revised Code § 4112 mirrors one brought under Title VII, so both can be analyzed solely under Title VII. *See Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 541 (6th Cir. 2003). Damages that are awarded in such an action may be distributed between the state and federal claim. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 548 (6th Cir. 2007) ("Because the jury's verdict was based on both federal and state law claims, the plaintiffs were entitled to elect which statute they would receive

-3-

Case No. 1:11-CV-2589
Gwin, J.

damages under. Since the [state] statute has no damages caps, the Title VII limits do not apply."). Ohio's compensatory damages cap for noneconomic losses recoverable in a tort action is $250,000. Ohio Rev. Code § 2315.18(B)(2). The jury's award of $195,000 in compensatory damages is well within these limits.

But, Defendants contend, the jury only heard instructions on the federal claim; the state allotment is therefore inapplicable. This argument is unpersuasive. First, Defendants never objected to the Court's jury instruction on this issue, the argument was not preserved for review, and is therefore reviewed for plain error. *See* Fed. R. Civ. P. 51(d)(1-2). Second, any failure to instruct on the state claim is harmless, as the state and federal claims are legally identical. *See Abbott*, 348 F.3d at 541. It strains credulity to believe that a jury could return a verdict against Defendants on the federal claim, but decide differently on the identical state claim. And third, instructions solely on federal claims can permit state law liability if the instructions are sufficient. *See Hall v. Consol. Freightways Corp. of Del.*, 337 F.3d 669, 677 (6th Cir. 2003) (permitting a punitive damages award to stand under state law even though the instructions were premised on federal law). The relevant question is whether the instructions were sufficient to support the jury's decisions. *Id.* at 679. This Court concludes that the instructions support the jury's ultimate decision to award $195,000 in compensatory damages.

Punitive Damages under Ohio Law

Defendants further argue that this Court instructed the jury only as to the federal standard for punitive damages, as opposed to the state standard. Defendants also say that a federal employment discrimination claim may not give rise to individual liability for punitive damages. Plaintiff Mengelkamp does not take issue with this last argument, but argues instead that the punitive

Case No. 1:11-CV-2589
Gwin, J.

damages award should stand under the state law claim.

Once again, Defendants failed to raise this argument during the trial. In fact, this Court invited the instant contention when it told the parties that "there have been separate claims in some ways made under State law and Federal law . . . ." Defense counsel did not object to using one set of instructions for both claims. This claim is therefore reviewed for plain error. Fed. R. Civ. P. 51(d)(1-2).

This Court instructed the jury that punitive damages against Defendant Knotts would be appropriate only if "Defendant Stephen Knotts personally acted with reckless indifference to plaintiff's federally protected rights." Under Ohio law, punitive damages may be recovered only upon a showing of "actual malice." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio 1994). "Actual malice" is defined under Ohio law as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* (internal quotation marks omitted). It is this latter prong with which this Court is concerned today.

The Sixth Circuit had the opportunity to assess a similar situation in *Hall*. There, the district court instructed that punitive damages may be awarded if the defendant was found to have acted with "malice or reckless indifference to the rights of" the plaintiff. *Hall*, 337 F.3d at 678. It further defined "reckless indifference" as reflecting "that entire want of care which would raise the presumption of a *conscious indifference* to consequences." *Id.* The Sixth Circuit ultimately concluded that "[b]ecause the district court instructed the jury that reckless indifference was that conduct which would raise a presumption of a conscious indifference to the consequences of [d]efendant's actions, a finding of reckless indifference by the jury was sufficient to meet Ohio's

Case No. 1:11-CV-2589
Gwin, J.

definition of actual malice." *Id.* (quotation marks omitted).

*Hall* therefore merged "conscious indifference" with "conscious disregard" for purposes of Ohio's punitive damages requirements. The instant question is whether "reckless indifference" could also be part of that set of synonymous phrases. Under the current standard of review, it can: the district court in *Hall* instructed on reckless indifference, and punitive damages under Ohio law stood. This Court's instruction was therefore not plainly erroneous. Moreover, Ohio court have permitted reckless indifference to support an award of punitive damages. *See Ward v. Hengle*, 124 Ohio App. 3d 396 (Ohio Ct. App. 1997); *Leichtamer v. Am. Motors Corp.*, 424 N.E.2d 568, 579 (Ohio 1981) ("Moreover, intentional, reckless, wanton, willful, and gross acts which cause injury to person or property may be sufficient to evidence that degree of malice required to support an award of punitive damages in tort actions."). *See also Leichtamer*, 424 N.E.2d at 582 (Brown, J., concurring) ("Defendants acted with reckless indifference to the safety of the plaintiffs and others by failing to test the roll bar system for foreseeable pitch-over. Such response supports the total award of punitive damages . . . .").

Finally, the evidence adduced at trial supports a finding that Defendant Knotts consciously disregarded Plaintiff Mengelkamp's rights. Knotts was tasked with acting upon Mengelkamp's investigations into human resources complaints, and yet still engaged in retaliatory conduct. The evidence further supports a finding that Knotts's actions were "outrageous" and "flagrant," so as to militate against upsetting the jury's verdict. *Pelletier v. Rumpke Container Serv.*, 753 N.E.2d 958, 964-65 (Ohio Ct. App. 2001). An agency's head, investigating allegations of gender harassment, decides to punish the messenger instead. It is not plainly erroneous to conclude that so doing constitutes outrageous behavior within the ambit of Ohio's punitive damages scheme.

Case No. 1:11-CV-2589
Gwin, J.

B. *Motion for a new trial*

Defendants next ask for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. [Doc. 83.] They say that such an extraordinary request is warranted because "there is no basis to determine the reasonableness of the compensatory damages award." Defendants' argument, as best this Court can understand it, is two-pronged: first, that the lack of itemized damages precludes this Court from properly assessing the damages cap, and second, that front pay damages should not be allowed. [*Id.*] Defendants properly preserved this claim for review; however, given the analysis in Part II.A, the damages cap issue need not be addressed.

> Using pattern Ohio jury instructions, the damages instructions stated:
>
> You may award compensatory damages only for injuries that the plaintiff proves were caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation. No more and no less. You may award damages for any pain, suffering, or mental anguish that the plaintiff experienced as a consequence of the defendant's termination of her. No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced in evidence.
>
> . . . .
>
> You may award as actual damages an amount that reasonably compensates the plaintiff for any lost wages and benefits, taking into consideration any increase in salary and benefits including pension that the plaintiff would have received had the plaintiff not been discriminated against.
>
> You must reduce any award by the amount of expenses that the plaintiff would have incurred in making those earnings. Now, you must also calculate separately as future damages a monetary amount equal to the present value of the benefits the plaintiff would have earned had plaintiff not been terminated for the period from the date of your verdict until the date when a plaintiff would have voluntarily resigned or obtained other employment. You must also reduce any award to its present value by considering the interest that the plaintiff could have earned on the amount of the award if the plaintiff had made a relatively risk free investment.

The interrogatories included only one line-item for compensatory damages.

Case No. 1:11-CV-2589
Gwin, J.

A jury's damage award is to be accorded great discretion, with the caveat that it cannot be speculative. *Rodgers v. Fisher Body Div.*, 739 F.2d 1102, 1107 (6th Cir. 1984). Under Rule 59, this Court may grant a new trial only if a jury has rendered a "seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion." *Mike's Train House, Inc. v. Lionel, LLC,* 472 F.3d 398, 405 (6th Cir. 2006). To succeed on a motion for a new trial, the moving party must show that the challenged verdict was unreasonable, and that a reasonable juror could not have made such a decision. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000).

Defendants argue that front pay could not have been a part of the award because Mengelkamp received employment within six months after her wrongful termination. This notwithstanding, Dr. James Zinser, Plaintiff's damages expert witness, testified that the value of lost benefits neared $120,000. David Kokoski, Plaintiff's labor market expert witness, testified that it was unlikely that Plaintiff Mengelkamp would secure employment providing her with the same benefits she had prior to her termination. Defendants were free to offer their own expert witnesses or to otherwise challenge this testimony, but decided not to do so. [Doc. 65.] This Court finds Defendants' argument—that there was no basis for any front pay award—loses. Further, even if front pay should not have been awarded, the evidence would still support the jury's ultimate award.

C. *Plaintiff's motion for attorneys' fees*

Plaintiff Mengelkamp asks that this Court award her attorneys' fees as a prevailing party under 42 U.S.C. § 2000e-5(k). [Doc. 79.] Specifically, she asks for either an amount in conformity with her contingency fee agreement, or one based on an hourly rate of $400 per hour for attorney time and $100 per hour for paralegal time. [*Id.*] She also seeks costs related to the retention and

Case No. 1:11-CV-2589
Gwin, J.

presentation of experts. [*Id.*] Defendants oppose the motion in part. [Doc. 84.] They do not oppose the number of hours submitted, but say that a reasonable rate should be between $196 and $275 per hour for attorney time. [*Id.*]

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). The party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed. *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Therefore, "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *B & G Mining, Inc. v. Dir., Office of Workers Comp. Programs*, 522 F.3d 657, 663 (6th Cir. 2008).

Robert Sweeney and Brian Corrigan, Plaintiff's counsel, supports their hourly rates with an affidavit from a local trial attorney certified by the National Board of Trial Advocacy and who has served as a lecturer for National Institute of Trial Advocacy programs.[1/] [Doc. 92.] The affiant states that Mengelkamp's case was particularly difficult and required a high degree of professional knowledge; that an hourly rate of $400 for Sweeney and $250 for Corrigan is reasonable for like cases in greater Cleveland, Ohio; and that Sweeney's initial demand of $300,000 during settlement negotiations demonstrates his professional competence. [Id.] Plaintiff's counsel provides neither

---

[1/] The affiant also explained that the original fee and hour schedule erroneously attributed some of the hours worked by Brian Corrigan to Robert Sweeney. [Doc. 92 at ¶17.]

-9-

Case No. 1:11-CV-2589
Gwin, J.

statistical evidence nor case law to support his claimed rate.

Defendants offer "The Economics of Law Practice in Ohio," a 2010 publication by the Ohio State Bar Association. [Doc. 84-1.] That publication surveys hourly billing rates for attorneys across the state based on various characteristics:

- An attorney in a firm the size of Sweeney's (four attorneys) has a mean hourly billing rate of $210 and a median rate of $198; [doc. 84-1 at 24.]

- An attorney having practiced as long as Sweeney (36 years) has a mean hourly billing rate of $229 and a median rate of $205; [*id.*]

- An attorney having practiced as long as Corrigan (20 years) has a mean hourly billing rate of $212 and a median rate of $198; [*id.*]

- An attorney with an office in greater Cleveland has a mean hourly billing rate of $239 and a median rate of $210, whereas an attorney with an office in downtown Cleveland has a mean hourly billing rate of $275 and a median rate of $268. [*Id.*]

The Court is tasked with awarding Sweeney and his associates reasonable fees necessary to encourage competent lawyers to undertake such representations. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). In light of the evidence presented by the parties, this Court awards attorneys' fees in the amount of $275 per hour for Sweeney's time, $212 an hour for Corrigan's time, and $100 an hour for any paralegal's time. The Court also awards costs of $5,815 related to the retention and presentation of Plaintiff's experts.

### III. Conclusion

For the foregoing reasons, Defendants' motions to alter the judgment and for a new trial are DENIED. Plaintiff's motion for attorneys' fees is GRANTED in part.

Case No. 1:11-CV-2589
Gwin, J.

    IT IS SO ORDERED.


Dated: November 7, 2012                    s/ *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE